## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

BODYGUARD PRODUCTIONS, INC.

        Plaintiff,

    v.

JOHN DOES 1-21,

        Defendants.

---

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

---

Bodyguard Productions, Inc. ("Plaintiff"), sues Defendants John Does 1-21 (collectively "Defendants") and alleges as follows:

### NATURE OF THE ACTION

1.    This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the Copyright Act").

2.    The Plaintiff alleges that each Defendant is liable for direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501.

### JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.     As shown on Exhibit 1 attached to this Complaint, each of the Defendants' acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical location within this District, and therefore, pursuant to Colo. Rev. § 13-1-124, this Court has personal jurisdiction over each Defendant because: (a) each Defendant committed the tortious conduct alleged in this Complaint in the State of Colorado, or, at a minimum, committed the tortious conduct by downloading copyrighted material from or uploading it from Colorado residents located in this judicial district, and/or (b) has engaged in business transactions in the State of Colorado.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because (1) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (2) the majority of the Defendants reside in this State. Additionally, venue is proper in this District pursuant to 28 U.S.C. §1400(a) (venue for copyright cases), because the majority of the Defendants or Defendants' agents reside in this District.

6.     The Plaintiff is a corporation registered under the laws of the State of Nevada. The Plaintiff has its principal offices in Los Angeles, California. The Plaintiff is an affiliate of Millennium Media, a production company and distributor of a notable catalog of major motion pictures, including, among others, *Rambo*, *The Expendables, Olympus Has Fallen*, *London Has Fallen*, and *The Hitman's Bodyguard,* the Plaintiff's copyrighted motion picture box office hit that is the subject of this lawsuit. *See* www.millenniumfilms.com.

7. Each Defendant is known to the Plaintiff only as an unidentified user of an IP address traced to a physical location within this District at a specific date and time (*see* Exhibit

2

1).

8. An IP address is a number that is assigned by an Internet Service Provider (an "ISP") to a subscriber of its Internet connection services during a specified period of time.

9. Identifying the subscriber assigned to an IP address at a specific time can lead to the identity of the probable user or users of that IP address at the precise time when infringing conduct was detected and thereby lead to a copyright infringement Defendant's true identity.

## JOINDER

10. Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiff asserts that: (a) each of the Defendants is liable to the Plaintiff jointly, severally, or in the alternative for infringing the Plaintiff's Work; (b) the infringement complained of herein by each of the Defendants was part of a series of transactions over the course of a relatively short period of time, involving the exact same piece of the Plaintiff's Work, and was accomplished by the Defendants acting in concert with other infringers of the Plaintiff's work; and (c) there are questions of law and fact common to all Defendants. Indeed, the claims against each of the Defendants are identical, and each of the Defendants used a BitTorrent protocol, jointly and in concert with other infringers, to infringe the Plaintiff's copyrighted Work.

## FACTUAL BACKGROUND

I. *The Plaintiff Owns the Copyright to the Work*

11. The Plaintiff is the owner of United States ("U.S.") Copyright Registration Number PAu 3-844-508 (the "Registration") (Exhibit 2) for the motion picture

titled *The Hitman's Bodyguard* (the "Work").

12.   The Work is protected under United States copyright laws, and the Plaintiff has the requisite ownership interests in the copyright to the Work and its copyright Registration to bring this lawsuit for copyright infringement of the Work.

13.   The plot of the Work is about the world's top bodyguard getting a new client, a hit man (played by notable Hollywood actor Samuel L. Jackson).  The hit man has to testify at the International Court of Justice.  The bodyguard and hit man have to put differences between them aside and work together to make it to the trial on time.  The Work was a box office hit around the nation soon after its August 18, 2017 release and has played continuously for many weeks after its release in local Colorado theaters (*see* Exs. 3, 4, and 5 attached hereto).

II. *General Factual Background* and *Reasons for Seeking Relief from this Court.*

14.   The Plaintiff comes to court seeking relief because its Work has been illegally pirated over the Internet thousands of times worldwide, and many of these instances of piracy occurred in this judicial district.  In fact, the Plaintiff's copyrighted Work, *The Hitman's Bodyguard*, was the most pirated film in the United States shortly after its release (*see* Exhibit 6 attached hereto).

15.   The Defendants are not merely illegal viewers of the Plaintiff's Work, but they are also parties that maintained the motion picture in a manner that facilitated further distribution and infringing activity by others.

16.   The IP addresses that were used or accessed by the Defendants have also been observed as associated with the peer-to-peer exchange of numerous other titles in violation of

others' copyrights through the BitTorrent network, and this activity indicates that the

Defendants' misconduct has been willful and persistent.

17.   The volume and titles of the activity associated with each IP address accessed by

each Defendant indicates that each Defendant is likely either the primary subscriber assigned to

the IP address, someone who resides with the primary subscriber, or someone who is an

authorized user of the IP address and had consistent and permissive access to it.

18.   The volume of the activity associated with the IP address accessed by each

Defendant indicates that anyone actively using or observing activity on that IP address would

likely be aware of that Defendant's conduct that is alleged in this Complaint.

19.   The Defendants had notice of the Plaintiff's rights through general publication

and advertising, including, but not limited to, publication in the credits of the Work, the

Plaintiff's copyrighted motion picture, which bear a legally enforceable copyright notice (*see* Ex.

7, copy of a screen shot from the motion picture's credits).

20.   On the specific dates and times of the infringing activities alleged in this

Complaint, the IP addresses accessed by the Defendants were managed by ISPs, who on

information and belief, generally assign an IP address to a single party for extended periods of

time, often for months, and provide Wi-Fi systems with pre-installed security and passwords.

21.   ISPs generally notify and inform their subscribers about the importance of

security, put their subscribers on notice that they are each responsible for the activity associated

with their account, and caution their subscribers not to allow third party or unauthorized access.

22. The records maintained by each respective ISP can identify either each

Defendant, or, at a minimum, the subscriber who contracted with the ISP for service, who, in turn, is likely to have knowledge that will lead to the identity of each Defendant.

23.   The Plaintiff intends to seek limited expedited discovery, including leave to subpoena information from any relevant ISP, in order to ascertain the true identity of each Defendant and be in a position to timely and properly serve each Defendant with a Summons and a copy of this Complaint, or, more specifically, an Amended Complaint naming a Defendant or Defendants.

III.   *The Defendants Used BitTorrent To Infringe the Plaintiff's Copyright.*

24.   The acquisition, copying, and transfer of the Plaintiff's motion picture, its copyrighted Work, is accomplished by the Defendants by their use of a BitTorrent protocol (in other words, set of computer rules) or "torrent."  The BitTorrent protocol is different from other Peer-to-Peer ("P2P") networks.   The BitTorrent protocol makes even small computers with low bandwidth capable of participating in large data transfers across a P2P network.  Accordingly, the BitTorrent protocol has become the most common peer-to-peer Internet file sharing protocol used for distributing large amounts of data; indeed, it has been estimated that users of the BitTorrent protocol on the Internet account for over a quarter of all Internet traffic, and the creators and users of BitTorrent have developed their own lexicon for use when talking about  BitTorrent.[1]

25. The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network.  In order to

---

[1] Definitions of relevant portions of  the BitTorrent vocabulary, which are fully incorporated herein, are set forth in several recent federal cases, including cases in this judicial district.  *See BKGTH Productions, LLC v. John Does 1-3, 5-10, 12, 15-16, Civil Action* No. 13-cv-01778-WYD-MEH, Dkt. #54, December 9, 2013*, citing Patrick Collins, Inc. v. John Does 1-28,* No. 12-13670, 2013 WL 359759 (E.D. Mich. Jan. 29, 2013).

reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users, called "peers," to join a network over the Internet, called a "swarm," of host computers to download and upload from each other (one computer connected to numerous computers).  It thereby allows users to interact directly with each other to:  (1) make files stored on a user's computer (*e.g.*, motion pictures) available for copying by other users; (2) search for files stored on other computers; and, (3) transfer exact copies of files from one computer to another over the Internet.

26.   The use of BitTorrent requires multiple intentional acts.  Its use requires the loading of specific software, then it requires that the user join a swarm, or network.  Then it requires the user to both search for a file and select the file chosen for downloading and distribution over the network.  As each user, or peer, joins the network and requests a copy of a file, that user forms a type of social contract with the other users in the network to both download the file and be part of the network in order to allow the file to be downloaded by other users, *i.e.*, other peers in the network.  Each new peer requesting the file receives pieces of the data from every other peer who has already downloaded the file, and then that new peer, in turn, makes that content available to the other users in the network.

27.   Because the BitTorrent protocol also generally limits a peer's ability to download unless he or she also uploads or shares, there is substantial incentive for each peer to remain online and continue to make files available for other peers to download, because remaining online maximizes his or her download speed and access to additional content.

28.   The Defendants have been observed making the Plaintiff's copyrighted motion

7

picture, its copyrighted Work, available to others in furtherance of a BitTorrent network, without the Plaintiff's authorization.

29.  Specifically, the Plaintiff retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's Work.

30.  MEU used proprietary forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

31.  MEU extracted the resulting data emanating from its investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of: FF29CB75986B6711CB47E75865F5BD758D080B3E  (the "Unique Hash Number").

32.  The IP addresses, Unique Hash Number, and infringement dates and times that are shown on the Exhibit 1 that is attached to this Complaint accurately reflect what is contained in the evidence logs, and show:

(A)     Each Defendant had copied a piece of the Plaintiff's Work identified by the Unique Hash Number; and

(B)     Therefore, each Defendant was part of the same series of transactions.

33.  Through each of the transactions, each of the Defendants' computers or devices used their identified IP addresses to connect to the investigative server from a computer or device in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

34.  An agent or employee of MEU analyzed each BitTorrent "piece"

distributed by each IP address listed on Exhibit 1 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work that is identical, strikingly similar, or substantially similar to the Plaintiff's original copyrighted Work.

35. Further, an agent or employee of MEU confirmed that each Defendant was actively distributing, or "seeding," the Plaintiff's Work to other peers in the same swarm.

IV. *The Business of Piracy and Harm to the Plaintiff and Society*

36. Internet piracy, particularly BitTorrent piracy, though known as peer-to-peer file sharing, is often a for-profit business, because many software clients, torrent sites, and networks generate millions of dollars in revenue through sales and advertising.

37. To increase the value of the advertising and sometimes subscription access sold by torrent sites, many parties work to expand the pool of available titles and speed of downloads available by increasing the number of member peers and thus the desirability of their clients and networks. To accomplish this, they often reward participants who contribute by giving them faster download speeds, greater access, or other benefits.

38. The Defendants' participation in the BitTorrent exchange of the Plaintiff's copyrighted motion picture is the type of activity that torrent sites use to promote their business and likely directly furthered the for-profit business of at least one torrent site.

39. Many parties, and likely some or all of the Defendants, have been compensated for their participation in expanding the availability of pirated content, such as the Plaintiff's copyrighted motion picture, to others through BitTorrent networks, even if only through being granted greater access to other pirated content.

40.   Digital piracy, including BitTorrent piracy, costs the entertainment industry billions of dollars per year. *See*  http://www.ncpc.org/topics/intellectual-property-theft/pirated-products, last visited October 28, 2017.  The impact of piracy is far greater than the mere loss of a single sale or loss due to the distribution of one copy of a motion picture.  Piracy undermines the economy, job base, and tax base on which our citizens rely, promotes a general disregard for the rights of others and the law, and is particularly harmful to persons and entities in the independent film industry, such as those persons and entities associated with the Plaintiff.  *See* https://www.theguardian.com/film/2014/jul/17/digital-piracy-film-online-counterfeit-dvds, last visited on October 28, 2017.

41.   Based on observed activity associated with the Defendants' IP addresses, the Defendants are prolific proponents of the BitTorrent distribution system and thereby of advancing the BitTorrent economy of piracy.

42.   Accordingly, giving effect to 17 U.S.C. §§ 101 et seq., and the enforcement of the intellectual property rights of persons such as the Plaintiff who are affiliated with independent film makers, and supporting their fight against the counterfeiting and piracy of their creative works, is critically important to the welfare of citizens in both the United States of America and the State of Colorado.  By engaging in the infringement misconduct alleged in this Complaint, the Defendants deprived not only the producer of the Work from income derived from its showing in public theaters, but also all persons involved in the production and marketing of this motion picture, numerous owners of local theaters in Colorado where it has been shown, and their employees, numerous other local theaters where it might have otherwise been shown, and their employees, and, ultimately, the local Colorado economy (*see* Exhibits 3-6 attached to

this Complaint).  The Defendants' misconduct at issue in this case therefore deeply offends

public policy and warrants fully granting the Plaintiff's requested relief.

## MISCELLANEOUS

43.    All conditions precedent to bringing this action have occurred or been

waived.

44.    Plaintiff retained counsel to represent it in this matter and is obligated to

pay said counsel a reasonable fee for its services.

## FIRST CLAIM FOR RELIEF
### (Direct Infringement)

45.    The Plaintiff incorporates the allegations in the foregoing paragraphs.

46.    Plaintiff is the owner of the copyright to the Work, which contains an

original work of authorship.

47.    By using the BitTorrent protocol and a BitTorrent Client and the processes

described above, each Defendant copied the constituent elements of the Plaintiff's work

that are original.

48.    The Plaintiff did not authorize, permit, or provide consent to the

Defendants to copy, reproduce, redistribute, perform, or display its Work.

49.    As a result of the foregoing, each Defendant violated the Plaintiff's

exclusive right to:

(A)    Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and

501;

(B)    Redistribute copies of the Work to the public by sale or other transfer of

ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C)     Perform the Plaintiff's Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images; and,

(D)     Display the Plaintiff's Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work non-sequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display.)

50.     Each of the Defendants' infringements was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A)     permanently enjoin each Defendant and all other persons who are in active concert or participation with any Defendant from continuing to infringe the Plaintiff's Work;

(B)     order that each Defendant delete and permanently remove the torrent file relating to the Plaintiff's Work from each of the computers under each such Defendant's possession, custody, or control;

(C)     order that each Defendant delete and permanently remove the copy of the Work each Defendant has on the computers under the Defendant's possession, custody, or control;

(D)     award the Plaintiff statutory damages pursuant to 17 U.S.C. § 504-(a) and (c);

(E)     award the Plaintiff its reasonable attorneys' fees and costs pursuant to

17 U.S.C. § 505; and

(F)     grant the Plaintiff any and all other and further relief that this Court

deems just and proper.

## DEMAND FOR A JURY TRIAL

The Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 6th day of November, 2017.

Respectfully submitted,


/s/ *David J. Stephenson, Jr.*
David J. Stephenson, Jr.
5310 Ward Rd., Suite G-07
Arvada, CO 80002
Telephone: (303) 726-2259
Facsimile: (303) 362-5679
david.thunderlaw@gmail.com
Attorney for the Plaintiff

**Plaintiff's Name and Address:**
Bodyguard Productions, Inc.
318 N. Carson St., #208
Carson City, NV 89701